IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



TYEL LAWSHAWN CLAIBORNE, SR.,

    Plaintiff,

v.                                           Civil Action No. 3:17CV556

INDER JEET SINGH GUJRAL,

    Defendant.

**MEMORANDUM OPINION**

Tyel Lashawn Claiborne, Sr., a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action. In his "PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:17CV556" ("Particularized Complaint," ECF No. 17), the Court construes Claiborne to allege that Dr. Inder Jeet Singh Gujral, a physician at Sussex II State Prison ("Sussex II"), denied him adequate medical care in violation of the Eighth Amendment with respect to the removal of the cast on his broken foot. (Part. Compl. 1-2.)

This matter is before the Court on the Motion for Summary Judgment (ECF No. 28) filed by Dr. Gujral. Claiborne has filed a response to the Motion for Summary Judgment, entitled "Re: MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" ("Response," ECF No. 34). For the reasons that follow, the Court will grant the Motion for Summary Judgment and will dismiss the action.

## I. SUMMARY OF CLAIBORNE'S CLAIM

Claiborne contends that Dr. Gujral denied him adequate medical care with respect to his broken foot.[1] Claiborne faults Dr. Gujral because, upon Claiborne's insistence that Dr. Gujral remove the cast because Claiborne believed it had gotten wet and mildewed, Dr. Gujral removed the cast, and thereafter, refused to place a new cast on Claiborne's foot. (Part Compl. 1-2.) Claiborne asked for a foot brace, but Dr. Gujral gave him ace bandages instead. Claiborne contends that due to Dr. Gujral's refusal to recast Claiborne's foot, his foot healed "irregularly and [he] now [has] a permanent limp." (Id. at 2.) As relief, Claiborne seeks monetary damages. (Id. at 3.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify

---

[1] As a preliminary matter, Claiborne indicates that Dr. Gujral should be "held responsible for his negligence." (Part. Compl. 2.) However, an assertion of negligence, does not state a claim of constitutional dimension. See Deavers v. Diggins, No. 3:13-CV-821, 2015 WL 692835, at *4 (E.D. Va. Feb. 18, 2015) (citing Farmer v. Brennan, 511 U.S. 825, 835, 836 (1994); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). Thus, the Court construes Claiborne to argue that Dr. Gujral's actions violated the Eighth Amendment.

the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the

3

district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Dr. Gujral has submitted his own declaration (Mem. Supp. Mot. Summ. J. Ex. A ("Gujral Decl."), ECF No. 29-1), and Claiborne's medical records (ECF Nos. 29-2, 29-3). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324. Although, Claiborne filed a response, he has not cited any evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. See Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).[2] Therefore, the Court may rely solely on Dr. Gujral's declaration and the supporting medical records in deciding the Motion for Summary Judgment. See Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record

---

[2] Claiborne submitted an unsworn Complaint. Because Claiborne failed to swear to the contents of his Complaint under penalty of perjury, the Complaint fails to constitute admissible evidence. See United States v. White, 366 F.3d 291, 300 (4th Cir. 2004).

in search of evidence to support a party's opposition to summary judgment.'" (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992))).

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Claiborne.

### III. UNDISPUTED FACTS

#### A. Claiborne's Interactions With Dr. Gujral

Dr. Gujral was employed as the medical director at Sussex II from March 2013 until August 23, 2016. Dr. Gujral is a board-certified physician and due to extensive training and experience in orthopedics, is board-eligible in orthopedic surgery. (Gujral Decl. ¶¶ 1, 3.) Claiborne has a history of foot pain that pre-dates the incident that gave rise to this action. (Id. ¶¶ 5-7.)

On July 20, 2016, Dr. Gujral examined Claiborne's right foot. (Id. ¶ 9.) Claiborne indicated that he injured the foot when he fell playing basketball in the recreation yard. (Id.) Dr. Gujral observed swelling on the outer side of the foot with accompanying tenderness, and an X-ray "demonstrated a displaced fracture at the base of 5th metatarsal." (Id.) Dr. Gujral placed a short cast on Claiborne's foot "to immobilize the fracture, provided instructions to [Claiborne] regarding cast care and ambulation with crutches, prescribed ibuprofen for pain, and ordered

[Claiborne] be placed in the [Sussex II] infirmary on 23-hour observation to confirm [Claiborne] was keeping the right leg elevated and doing well with the treatment . . . ." (Id.) Dr. Gujral ordered a follow-up appointment in one week. (Id.)

On July 21, 2016, Claiborne was evaluated by a different healthcare provider who instructed Claiborne to keep the follow-up appointment in one week, to "keep the cast dry at all times, to use a black plastic bag to cover the cast when showering, use crutches and continue with no weight bearing on the effected extremity." (Id. ¶ 10.) Claiborne was discharged back to general population. (Id.)

On July 27, 2016, Dr. Gujral saw Claiborne for the follow-up appointment. (Id. ¶ 11.) Claiborne complained of foot pain; however, an examination revealed the cast was intact and his foot was not swollen. (Id.) Dr. Gujral advised Claiborne to continue to use crutches and begin partial weight bearing on his foot, prescribed additional ibuprofen to treat Claiborne's discomfort, and ordered that Claiborne be scheduled for a follow-up appointment in four weeks. (Id.) Dr. Gujral advised nursing staff to issue Claiborne a plastic bag to cover the cast when he showered. (Id.)

On July 30, 2016, during afternoon pill pass, Claiborne asked nursing staff for a new plastic bag for his cast because the other bag was missing. (Id. ¶ 12.) "The nurse noted that the detail for the plastic bag required the old bag to be returned prior to

6

a new bag being issued and the charge nurse was notified of [Claiborne's] request." (Id.) Dr. Gujral avers that he was not notified of this nursing visit and he was not asked by the nursing staff to issue another medical detail for a new plastic bag. (Id.)

On August 9, 2016, Dr. Gujral saw Claiborne and Claiborne insisted on having his cast removed "claiming there was fungus growing inside his cast." (Id. ¶ 14.) Dr. Gujral explained "the cast was in good shape and there should be no cause for concern; however, Claiborne insisted on having the cast removed because of itching and out of concern for infection. (Id.) Dr. Gujral advised Claiborne that removing the cast was against his medical advice, but "out of concern [that Claiborne would] incur further injury if he attempted a self-remedy, [he] removed the cast." (Id.) After the cast was removed, Dr. Gujral found no evidence of infection, and after examining Claiborne's foot, he "opined [that] the foot was sufficiently healed so as not to warrant a further casting and chose to continue treatment with an Ace[] bandage in conjunction with the use of a shoe." (Id.) Dr. Gujral instructed Claiborne to continue to use crutches and to bear weight as tolerated while using crutches. (Id.) Dr. Gujral scheduled a three-week follow-up appointment for Claiborne. (Id.) Dr. Gujral has no further contact with Claiborne after the August 9, 2016 appointment and his last day working at Sussex II was August 23, 2016. (Id. ¶¶ 14-15.)

At the time of Dr. Gujral's last appointment with Claiborne, he believed that Claiborne's "metatarsal fracture was healing well and would heal completely with the care, treatment and recommendations I provided on that day which included ongoing ambulation with crutches." (Id. ¶ 16.) Dr. Gujral avers that "[a]t no time prior to my departure from [Sussex II] did I enter an order for Plaintiff to discontinue the use of crutches during ambulation." (Id.)

B.  **Claiborne's Medical Care After Dr. Gujral's Departure**

On August 28, 2016, Claiborne refused a nurse sick call appointment. (Id. ¶ 19.) On August 29, 2016, Claiborne was evaluated during a follow-up appointment by another physician and complained of foot pain. (Id.) The physician noted "right foot tenderness, no swelling and a neurovascularly intact right foot." (Id.) The physician ordered more X-rays and scheduled Claiborne for a follow-up appointment in thirty days. (Id.)

On October 26, 2016, Claiborne was seen at nurse sick call "complaining of not being able to wear state boots since a right ankle fracture 3 to 4 months ago and feels the heel [of the boot] makes his pain worse." (Id. ¶ 21 (alteration in original.) The nurse noted mild swelling of the right ankle and referred Claiborne to the physician for an alternative footwear assessment. (Id. ¶ 21.)

Claiborne was next seen by a physician on November 28, 2016 to assess the need for special shoes for foot pain. (Id. ¶ 22.) The physician noted that Claiborne "could wear soft shoes or sneakers to help alleviate foot pain due to plantar fasciitis. (Id.)

On January 16, 2017, Claiborne was examined by the physician for his complaints of left foot discomfort secondary to an old injury and sore toes when ambulating with state issues sneakers or shoes. (Id. ¶ 23.) The physician noted no gross deformity, blisters or callouses, and ordered X-rays of both of Claiborne's feet. (Id.) The X-rays "now indicated non-union of an intraarticular fracture at the base of the 5th metatarsal versus unfused ossification center." (Id. ¶ 24.)

On January 26, 2017, Claiborne was seen at nurse sick call with complaints of bilateral foot pain and bunions. (Id. ¶ 25.) The nurse noted that he had no problem with ambulation, but that he had bilateral flat feet with minimal cushion. (Id.) Claiborne was referred for an examination with a physician. (Id.)

On February 14, 2017, Claiborne was seen by a physician who "noted a protrusion, bony lateral aspect of the right foot and tenderness to palpitation of the plantar surface of the right foot." (Id. ¶ 26.) The physician referred Claiborne to an orthopedist and the orthopedist requested a new set of X-rays before the appointment. (Id.) On February 23, 2017, Claiborne

9

had an X-ray series of his right foot that was compared with the X-rays from January 24, 2017. (Id. ¶ 27.) The radiologist noted a "healing non-displaced fracture of the fifth metatarsal with some increased fusion, a congenital malformation of the second middle phalanx, normal soft tissues and minimal hallux valgus." (Id.) On February 28, 2017, the orthopedist examined Claiborne and recommended a CT scan of the right foot with a follow-up appointment after completion of the scan. (Id. at 28.)

On May 5, 2017, Claiborne was seen at nurse sick call for complaints of bilateral foot pain. (Id. ¶ 29.) Claiborne's feet appeared normal, and the nurse administered ibuprofen. (Id.)

On June 9, 2017, Claiborne had a CT scan of his right foot that revealed a chronic fracture involving the proximal fifth metatarsal with bridging bone identified. (Id.)

On July 28, 2017, Claiborne was seen at nurse sick call for complaints of chronic right foot pain. (Id. ¶ 31.) Claiborne noted that he had broken his foot years ago and it was still painful, but the pain was relieved with medication from the commissary. (Id.) An examination revealed no swelling, bruising, discoloration or deformity, and a normal range of motion, capillary refill time, gait, and weight bearing. (Id.)

Claiborne visited medical during December 2017 through March 2018 for complaints unrelated to foot pain. (Id. ¶¶ 24-27.)

## IV. EIGHTH AMENDMENT

### A. General Eighth Amendment Principles

To survive a motion for summary judgment on an Eighth Amendment claim, Champion must demonstrate that Defendants acted with deliberate indifference to his serious medical needs. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

12

## B. No Deliberate Indifference to A Serious Medical Need

Claiborne contends that Dr. Gujral was deliberately indifferent to his serious medical needs when he removed his cast upon Claiborne's insistence for him to do so, and then refused to replace it with a new cast, which allegedly caused Claiborne's foot to heal irregularly. Claiborne fails to establish that Dr. Gujral actually knew of and disregarded a serious risk of harm to Claiborne in the twenty-day period that he treated Claiborne for his broken foot. As discussed below, Claiborne's complaints are belied by the record.

After he determined that Claiborne fractured his foot, Dr. Gujral placed Claiborne's foot in a short cast, provided Claiborne with instructions on caring for the cast and ambulating with crutches, ordered Claiborne be placed in the infirmary for twenty-four-hour observation, and scheduled a follow-up appointment for one week later.[3] (Gujral Aff. ¶ 9.) The following day, a different

---

[3] For the first time in his Response, Claiborne alleges that the "medical department . . did not bring a wheelchair! I was forced to walk to medical. No ice was given for the swelling mentioned in the report, only xray." (Resp. 2.) As a preliminary matter, the Response in Opposition to a Motion for Summary Judgment is not the proper place to add new claims or allegations that were not contained in the Particularized Complaint. Rather, Claiborne would need to file an amended complaint to add any new allegations. Nevertheless, Claiborne fails to allege that Dr. Gujral had any personal involvement in the refusal to provide Claiborne with a wheelchair or ice, or that by failing to provide a wheelchair or ice, Dr. Gujral knew of and disregarded a serious risk of harm to Claiborne.

physician, instructed Claiborne to keep the cast dry and provided Claiborne with a bag to cover his foot, and instructed Claiborne to use crutches and to place no weight on the broken foot. (Id. ¶ 10.) At the follow-up appointment on July 27, 2016, Dr. Gujral noted the cast was intact and there was no swelling, and Dr. Gujral advised Claiborne to continue to use the crutches and to begin bearing partial weight on the broken foot. (Id. ¶ 11.) Dr. Gujral also issued another plastic bag to cover the cast while showering. (Id.) To the extent Claiborne contends that he was denied another bag to keep his foot dry, Dr. Gujral avers that he had no knowledge that Claiborne was refused a new bag or any involvement in the decision to refuse him a bag and that the nurses did not notify him that Claiborne needed a replacement. (Id. ¶ 12.)

On August 9, 2016, Claiborne requested that his cast be removed because he claimed that "there was fungus growing inside the cast." (Id. ¶ 14.) Dr. Gujral advised Claiborne that it was against his medical judgment to remove the cast; however, Claiborne would not accept his advice, and because he was concerned that Claiborne would attempt to remove it himself, he proceeded to remove the cast. (Id.) After removing the cast, Dr. Gujral examined Claiborne's foot and found no sign of infection. (Id.) In his medical judgment, Dr. Gujral "opined the foot was sufficiently healed so as not to warrant further casting and [he] chose to continue treatment with an Ace[] bandage in conjunction

14

with use of a shoe." (Id.) Dr. Gujral instructed Claiborne to continue to use crutches and scheduled a follow-up appointment for Claiborne in three weeks. (Id.) As of that date, Dr. Gujral opined that that the "fracture was healing well and would heal completely with the care, treatment and recommendations I provided that day which included ongoing ambulation with crutches." (Id. ¶ 16.) Dr. Gujral had no further contact or involvement in Claiborne's treatment as of August 9, 2016, and he stopped working at Sussex II on August 23, 2016. (Id. ¶ 15.)

Contrary to Claiborne's suggestion, Dr. Gujral provided adequate care for Claiborne's broken foot. Claiborne contends that because it was against Dr. Gujral's medical judgment to remove the cast, the fact that he actually removed the cast, proves that he was deliberately indifferent to Claiborne's serious medical needs. (Resp. 3.) However, although it may have been against his medical judgment to remove the cast, Dr. Gujral removed it out of concern that Claiborne may harm himself if he attempted to remove the cast himself. Moreover, after removing the cast and after examining the progress of the broken foot, Dr. Gujral believed it was healing well and could be treated with an ace bandage and continued use of crutches. Although Claiborne wanted Dr. Gujral to place another cast on his foot, Claiborne's disagreement with Dr. Gujral's medical judgment that no new cast was needed, fails to demonstrate deliberate indifference. See Wright, 766 F.2d at

849 (citing Gittlemacker, 428 F.2d at 6).[4] Moreover, after August 9, 2016, Dr. Gujral no longer had any involvement in Claiborne's medical care.

In sum, Claiborne fails to establish that Dr. Gujral subjectively recognized a serious risk of harm to Claiborne and chose to ignore that risk during the twenty-day period he treated Claiborne's broken foot. Farmer, 511 U.S. at 837. Accordingly, Claiborne's claim against Dr. Gujral will be dismissed.

## V. CONCLUSION

For the foregoing reasons, Dr. Gujral's Motion for Summary Judgment (ECF No. 28) will be granted. Claiborne's claim and the action will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion to Gujral and counsel of record.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 1, 2019

---

[4] Notably, after Dr. Gujral left and Claiborne was under the care of a different physician, no physician chose to put another cast on Claiborne's foot.